The next case on the calendar is Bangs v. Smith. Good morning, guys. May it please the Court, Andrew Stecker of Prisoners' Legal Services of New York for Plaintiff Appellant Stephen Bangs. I would like to make three points. First, this case involves an individual's ultimate freedom from incarceration following a grant of parole release. This is the same liberty interest that was established by this Court in its decisions in Victory v. Pataki and Drayton v. McCall. Second, it has been clearly established for decades that a parole release date cannot be rescinded without notice in a hearing. Yet in this case, Mr. Bangs' release date was taken away without any hearing at all. Finally, third, this case cannot be decided on a motion to dismiss. It needs to be remanded for development of a factual record before any decision on defendant's qualified immunity defense. On point one, with respect to step one of the due process analysis, in Victory v. Pataki, this Court held that a New York parole grantee possesses a liberty interest in his release date protected by the due process clause. In Victory, the plaintiff's grant of parole release was not absolute. It could be reconsidered and it could be rescinded for a number of reasons, including changes in the parole grantee's institutional record, such as program participation. This Court nevertheless held that the plaintiff in Victory had a legitimate expectation of release once he was granted parole. Can I just ask a question and help me understand this? As I understand the way these merit time credits work, the warden, the prison officials, will give merit time for participation in a program. The parole board may thereafter set a release date that's earlier than otherwise would happen on the basis of these merit time. But it's really within the discretion of the commissioner to revoke them if there's a disciplinary infraction or a subsequent failure to participate in a program. And the parole board would not have any authority to disagree with the commissioner's determination or not to change that. So I'm just wondering what the purpose of the program is. Well, I think that's a fair characterization of state law at this point. I think the point here of plaintiff's claim is not necessarily that a rescission hearing in a specific form was required before the Board of Parole after revocation of his merit time credit. The point here is that, you know, some kind of hearing had to be held. Specifically, our position is that a Drayton hearing needed to be held. So, you know, I don't necessarily disagree with the district court's characterization that a rescission hearing before the board once his merit time were revoked. That would not necessarily have allowed the Board of Parole to overrule that determination. That being said, I do think it's a bit of a leap to conclude that such a hearing would be completely futile. I guess I'm asking what kind of process would you seek? Assuming there's a liberty interest and that there's a need for process, what should that process be? Our position is that it should be a hearing with the procedures enumerated in Drayton. Now, I think the question of where that hearing is held, is it held, you know, at the prison facility with prison, with the superintendent or designee or with members of the Board of Parole? I think that's a question to be answered by the state in the first instance. Honestly, there's no universal form of due process. And generally, you know, the federal courts are not going to instruct the specific details of those choices for the state. But it's been clearly established for some time now that some kind of hearing had to be held that satisfied the requirements of Drayton. To help with that, may I ask you to walk me through some of the process issues that are presented by the case? Because I'm going to ask them of your adversary and I want to be sure I know your position on it. The loss of the early parole date is governed by Section 8002.5 of New York regulations, I think. And that's what provides that there can be a suspension of the release date when there are grounds for reconsideration. That's what Defendant Venati did on February 14th of 2019. The Section 8002.5 also contemplates that your client would have received notice in writing that that had been done. And am I correct in understanding from the record that he was not given that notice? He was given some type of notice of suspension of his parole release date. Some kind of notice as to what? That his date had been suspended. Right, so he did receive that first notice. All right, then the section of New York law provides for there to be an investigation and report to the parole board. Was that done? As alleged in the complaint, no, it was not. So that's a defect that you are asserting. Then a board member has to order that the inmate be held for a rescission hearing. And if I understood it on February 21st, 19, Defendant Rick Bush signed that there was going to be rescission, but there was no hearing ever conducted. Am I correct about that? You may mean Defendant Smith. I'm sorry then if I got the defendant wrong. Defendant Smith did complete a form stating that parole would be rescinded, but it would be rescinded without a hearing. That I saw a little later. He signs it for the majority of the board. I'm going to get to that process in a moment. But the hearing that I understood New York law contemplates and titles the inmate to counsel, to the ability to present witnesses, etc. That hearing was never held, is that right? Correct, there was no hearing of any kind. So we have that defect in the state provided process. So then the next step is after the hearing, a majority of the board has to make a finding of substantial evidence to warrant rescission. That's what I understood Defendant Smith signed, but it not being clear whether he did it on his own or was speaking for a majority of the board. Can you help me on that? I would correct that a bit. That's what Defendant Smith did when he signed, I believe it's called, I believe as we've described in the complaint, it's a rescission decision worksheet. That would actually be something that happens earlier in the process than the substantial evidence hearing. Okay, so I got the timing wrong. Right, so that he filled, that's essentially a step where the board is to determine, essentially review the investigation that's presented to them by prison staff, decide whether or not the conduct described merits holding a rescission hearing to consider rescission. There's sort of two choices there, hold a hearing or don't hold a hearing. He chose actually the third choice. He checks the box for the third choice, which was to indicate that Banks' parole would be rescinded without a hearing based on the imposition of a new indeterminate sentence of incarceration or the recalculation of his current sentence. And where is that provided as permissible under New York law, to act that way rather than in the first two ways you delineated? Well, I don't know that we would necessarily agree it is permissible, but I think to the extent it corresponds to a regulation, it is in the section you referenced, 9 NYCRR 8002.5. There is a provision for rescission without a hearing when somebody's term of incarceration has been extended, when they've received a new criminal sentence or resentence. But is this circular? I mean, his sentence was extended because his credits were pulled. That seems to be the, yes, I think that's the correct justification. So, now let's jump ahead to the parole board hearing. As Judge Livingston asked you, the parole board could not have granted him relief. Is it your position that the hearing would nevertheless have been beneficial to allowing your client to demonstrate these failures in the process earlier, that even if the parole board couldn't have corrected them, identifying the gaps in the process would have allowed reconsideration by anybody? Our position on that is twofold. I think, yes, I think a hearing before the board would have been non-futile because I do think that had the board identified a defect and notified other prison officials of that, something could have been done. I think concluding otherwise is premature at this stage of the case. But I think the main thrust of our claim in this case is, you know, if it is the case that New York has made this institutional arrangement where someone who has a release date, a set release date, is going to be revoked based on new, you know, alleged new misbehavior, some kind of hearing has to be held. Now, maybe that means it can't be a hearing before the board of parole because of the particular institutional arrangements New York State has chosen. But if that's the case, they need to have some kind of a hearing at Gawanda or within DOCS that satisfies the same purpose. We have some precedent that says when we consider due process, we consider all the process the state affords. And that would include the Article 78 proceeding, which is where your client did get relief, albeit somewhat late. So does that undercut your due process argument at all, the fact that there was Article 78 available and that it did give him relief? No, for a few reasons. So first of all, I think that as we, I believe, had in the last section of our reply brief, this appears to be a situation where a pre-deprivation hearing absolutely is required. Okay, so that's your main argument, that it had to be pre-deprivation. Yes, and I would add, though, just as a factual matter, I think at this stage of the case, you know, as alleged in the complaint, it is not crystal clear to what, you know, why. What I can tell you of the sequence is that an Article 78 was filed. Before the states ever filed and served an answer, he was released. The case was, a stipulation of discontinuance was filed on the basis of his release. Saying anything more than that, I think, goes beyond the four corners of the complaint at this stage. And I also think that the question, you know, in terms of is this a situation where a pre-deprivation hearing is required or is this a random unauthorized act where a post-deprivation remedy would be adequate? Again, I think that's very premature at this stage. The question of what is DOCS's policy as to how this is supposed to work and to what extent the defendants deviated from that policy, that requires discovery to determine those questions. Unless the court has any other questions, I'll stop. Thank you. Good morning, Your Honors. Frank Brady on behalf of Respondent. May it please the court. Your Honor, if I could, there were several pertinent questions that you proposed and I'm going to try to address the ones that I can right off. As far as whether or not the parole board could or should have held a hearing under the parole board regulations for rescission, the rescission regulations don't directly address when an open date that has been granted has been rendered a legal nullity because a maritime allowance has been canceled. In this case, the plaintiff earned a maritime allowance, which gave him basically a ticket to go see the board early and to be considered for early release on his maritime release date. The board granted him release, but that parole grant, under this statutory scheme, for this regulatory scheme for maritime allowances, was always contingent on maintaining the maritime allowance. And once the maritime allowance was canceled, and that's a separate process question, once that was canceled, as far as the parole board is concerned, they had no power to review the decision to cancel the maritime allowance. Is it your position that the cancellation was correct or incorrect? I want to just finish that point. He became statutorily ineligible for release. There was nothing the parole board could do. As far as whether or not the decision to cancel the maritime allowance, which, by the way, that maritime allowance, my understanding, it was eventually restored, which is why his Article 78 proceeding was eventually dismissed on stipulation. Restored because it had mistakenly been. No, no, no. I believe it was restored, and this isn't in the record, although it is in the record that it was restored, I believe, that once he had spent the 30 days in keep lock and was able to go to class again, then he was able to continue his programming, and the commissioner restored the maritime allowance. I thought he got it restored in full, not just partially. Is that right? Practically, he couldn't get the benefit of it, but I thought it was restored in full. I mean, his whole argument is, look, he kept up his classes in prison. Right. So is the view of, I'm just trying to figure out what your client's view is, that somebody goofed and he shouldn't have had it pulled, or is it that, yes, he should have had it pulled, and then the officer was entitled to restore it? We don't think that there was anything wrong with what these defendants did here, or the correctional services defendants, because under the regulation for maritime allowance, which it can be withheld for discretionary reasons, it can be withheld because you are failing to continue your programming. It wasn't withheld here because he committed a disciplinary infraction. It was withheld here because he had committed a disciplinary infraction, a low-level disciplinary infraction, which resulted in his keep lock, and I know the allegation of the complainer that he was able to do some self-study while in keep lock, but he still wasn't doing the programming. He wasn't attending the classes, which were part of his programming. So they withdrew it or withheld it. I mean, it was eventually ---- You agree that the plaintiffs plausibly alleged a liberty interest once the parole board, looking at the merit credit, decides to give him an early release date. Am I right about that? There is a plausible liberty interest. You said at least maybe you would say there is a liberty interest. I think as a matter of pleading, he's pled that there's a liberty interest in his being granted parole. But I think, and I'm here to argue that these defendants have qualified immunity because this statutory scheme, this regulatory scheme, which is governed really by the maritime allowance procedures, doesn't give rise to a liberty interest even after the parole board has granted parole. Because these regulations, the regulations, the maritime allowance regulations specifically say this is in the matter of the commissioner's discretion and it can be withheld at any time prior to release. But subject to certain processes. But the regulations ---- Am I right? Subject to certain processes. In the maritime allowance scheme, and this is the core of his complaint, there really aren't any processes. Well, what am I looking at with respect to Section 8002.5 when I see that there's supposed to be notice in writing and an investigation and report to the parole board and then a hearing at which the inmate is afforded counsel and the opportunity to call witnesses. Isn't that the process that has to be provided in order to rescind the date? Your Honor, those regulations govern the rescission process. Right. So there's two different things going on, right? There's the rescission, the formality of the parole board sending him a notice that your open date is no longer. But that open date is no longer, not because of any discretionary decision of the parole board. But my point is his interest in being released on March 13, 2019, when it's rescinded that parole date, was he not entitled to all of the processes provided by Section 8002.5? No, because that section does not address when you're losing your open date as a result of a canceled maritime allowance. When the maritime allowance. What does it refer to? It refers to most of the other situations when, let's say somebody committed a disciplinary infraction or failed to do programming. Sometimes victims didn't get a chance to speak before the parole board. There could be reasons that the parole board needs to reconsider its exercise of discretion. And in this case, the parole board could not, there was no point to the parole board reconsidering. Section 8002.5 only applies to decisions of the parole board to rescind. Yes, yes, and here what happened is the parole board's, the date they gave him to be released, they couldn't revisit it. Once the maritime allowance was canceled, he became statutorily ineligible to be released on that date. And that's, those who cited my brief, it's under Penal Law 70.40 sub 1. You know, and so the parole board really, their hands were tied. They had, there's nothing they can do. It's as if he had been resentenced. You know, there's just an outside controlling new release date. And this one no longer was legal because the maritime allowance had been taken away. You know, so. So there is no process afforded for an erroneous maritime. For that we have to look at, for that we have to look at the maritime allowance scheme. And when we're talking about the maritime allowance scheme, you know, which you get this ticket to see the board early and it authorizes you to be released early. There is no process in there that gives, you know, inmates who have been granted a maritime allowance an opportunity to challenge that. It's not in the statute. You know, it doesn't give them, they don't have a liberty interest. There's no liberty interest. I'm looking at 280.4, which says it may be revoked at any time if the inmate commits a serious disciplinary infraction. You're saying this was not a serious disciplinary infraction. Or fails to continue to perform or pursue his or her assigned program plan. That's the problem for this. That's exactly where we are, yes. And he says, but I did continue it. I continued it in prison. I asked for all the materials and I continued it all. So he's still questioning whether you have a ground under this provision for. I think he's, yes, I think he's saying that I should have an opportunity to challenge that. To say no, what I'm doing in cell study is continuing my programming. And that meets it. You know, I understand the rub here. But it's not clearly established under this scheme. That's my argument. That it's not clearly established under this scheme that he had a right to a due process hearing. And, you know, even if it was, even if the case law somehow addressed this unique. And there are no cases, obviously, that address this unique situation. It wouldn't be, it's not even clear what process these defendants would have, you know, should have afforded him. Okay, but the provision you're now asking us to focus on. That deals with what can be done to rescind the merit time credit. The parole board still has to itself change the parole date or no? Well, there's nothing they could do really. They gave him notice. Well, the fact that they may not have the power doesn't necessarily answer the question of whether they have, in changing a date, they have to comply with 8002.5. Well, I submit, Your Honor, they didn't change the date. They just sent him notice that you're not going to be released that day. They don't change the date. What changed the date was the revocation of the merit time allowance. The merit time allowance made that an illegal date. So they were just giving him a formal notification that, you know, that open date for release, it's not happening anymore. Somewhere there's a paper that says what his release date is. What happened here? The 31319 order was pulled and no new order was put into place so that the old release date stood or there was a new order from the board that his release date should be? The merit time eligibility release date was, I think, March 13th. And so they gave him notice that that date was no longer operable because he had lost his merit time allowance. His new parole eligibility date, you know, his regular parole eligibility date was for, I think, October. September 16th. Or September 16th. Then he has the allowance restored and that's what results in it. He actually saw the board again in April in anticipation of the September release. They granted him parole. Then there was the 78 brought. But the merit time allowance that he initially had was restored. He was released and the article 78 was dismissed on stipulation. That's my understanding. You know, I understand that he feels like he should have an opportunity to challenge the basis for the merit time allowance. But it's not clearly established that he had such a right. The liberty, any liberty interest he had in that merit time allowance has to be grounded in this merit time allowance scheme. And this merit time allowance scheme does not give rise to liberty interest that extends beyond the commissioner's discretion. The regulation provides that the merit time credits can be rescinded for the serious disciplinary infraction or programming. I assume they could also be rescinded for filing a frivolous lawsuit since that's in the statute, right? Yes. So do you have a position on whether that regulation defines the universe of reasons that the commissioner can rescind? Or is it your position that that regulation is that the commissioner could rescind for any reason? I think that regulation might cabin the commissioner's discretion and define the nature of the liberty interest that's been given. If he were to do it for other reasons that didn't fit within the definition of these reasons, then I think there might be a due process issue. In the facility, if the inmate has a disagreement with whether he's fulfilling programming, is there any mechanism? Could you file a grievance about that? Absolutely, Your Honor. I don't believe he filed a grievance in this case, but he could have filed a grievance, and he obviously has the other remedy of filing Article 78, which he did. I would just note that, you know, as this Court held in Francis, it's a rare case where prior decisions definitively resolve novel claims of procedural due process. I'd ask this Court to affirm. Unless the Court has any more questions? Thank you. I just want to pick up on the question of a liberty interest from the maritime regulations. There is absolutely a liberty interest in earned good time credits against a sentence once they have vested, once they have been earned, and that was the case here. I mean, this is under Wolf v. McDonald. It's clearly established that an inmate has a liberty interest in earned good time credits that cannot be revoked arbitrarily. I mean, in the field of prison law, this is one of the most clearly established rights. No reasonable prison official could possibly think that they can revoke a good time credit against a sentence with absolutely no due process at all, especially whereas here, his release based on the good time credits was imminent. I mean, it was a month away. And I think that I just want to point out that, you know, putting aside the question of the rescission regulations of 8002.5, just looking purely at the maritime credit, he had a liberty interest there, and he needed to have at the very least a Wolf hearing, a hearing as described in Wolf v. McDonald, where he could have said, you're wrong. I'm not failing to perform my assigned program plan. My assigned program plan is whatever you assign me to. I'm not refusing programs. I'm doing exactly what you tell me to do. He could call his teacher as a witness, have his teacher say, he's one of my best students. He's doing everything he needs to do. He wasn't given that opportunity. And I would just like to contrast this with Francis v. Fiaco for a moment, because that case was brought up. Yes, that was a case where qualified immunity was granted. That was because, as this court held, in Francis, the procedural requirements, the step two requirements had never been enumerated by this court or any other court. That is not the case here. We have Wolf v. McDonald setting forth requirements for revocation of earned good time credits, and we have Drayton v. McCall, Green v. McCall, setting forth the procedures for recidivism. And correct me if I'm misunderstanding, but I think your adversary's argument would be there aren't clearly established procedures here, and it was operation of law that resulted in his loss of the early parole date once the commissioner decided to revoke the credits. So you had a liberty interest, but the state is entitled to qualified immunity. The requirements of constitutional due process are set forth by federal law. The fact that the state has chosen or neglected to set forth the required procedures under Wolf or other cases, that does not excuse them from complying. That would be quite circular, I think, if the state could evade the requirements of clearly established federal law by simply refraining from codifying a procedure. If I may, I would like to just make another point about this. I believe my adversary said that the parole board's hands were tied. I just want to say a couple things about that. First of all, the parole board is not a party to this case. There is one parole board commissioner who is a defendant. The rest of the defendants are Gawanda Correctional Facility employees. And to be clear, their hands absolutely were not tied. There are many things they could have done differently. They could have done nothing. They could have said, this guy's not doing anything particularly wrong, anything that would merit revocation of his date or his good time credit or anything like that. They could have held a rescission hearing. They could have done that. They could have said, we're not going to touch his merit time credit, but we are going to go to the board, and we're going to say we think the board might want to hold a rescission hearing to reconsider his date, given some changes in his programming status. Nothing in state law would have prevented them from doing that. So by no means were the defendants here, did they have their hands tied. There were any number of things they could have done in terms of holding a hearing. They could have charged him with a programming violation, which is there is a rule of behavior, dealing with a refusal to comply with the programming committee assignments. They could have done something like that. They chose to do the one thing that they knew would result inevitably in the extension of his sentence without a hearing. And I just want to contextualize this case for a moment in a sort of larger context of cases like Francis that was mentioned, but also Heard v. Fredenberg and Maskell v. Annucci, decisions of this court that have a common, some of those are procedural due process cases, some aren't, but there's a common theme where low-level New York State docs, prison employees, are administratively altering the length of a sentence with no due process. That is not consistent with this court's case law. Let me ask you, even if we accept your argument that this cannot be done without some kind of a hearing before the credits are lost, your defendants are operating within a scheme. We've talked about what 802 says, or I'm sorry, what 280 says, and it talks about the decision being final, that it may be revoked at any time. Why would we say that it's clearly established for them that they had to hold a hearing first? Because it's- We might now conclude that, but I'm only focusing now on the qualified immunity decision. I understand. I just don't think this is materially different from Wolf v. McDonald. Am I correct that New York does not afford hearings as a matter of course in these circumstances? I think you're correct in the sense that the maritime regulations do not themselves set forth a separate hearing procedure. And therefore, they don't conduct them. At least not a freestanding one as would have been required in this case. I mean, to be clear, just talking specifically about the maritime credits as a good time credit, if somebody has it revoked based on a serious disciplinary infraction, then yes, there would be a hearing held. Because it's a hearing on the disciplinary infraction. Exactly. And in some programming cases, there might be. There are certain, I can't really give a comprehensive enumeration here, but there are certain programming situations in DOCS where there are due process hearings for removal. The work release program being one of them. Am I right we don't have that in the record before us now? No, it is in 7 NYCRR. That's true. It's not in the complaint. But just to be clear, so it's not that there would never be a hearing. There in fact would be in some of these cases. But yes, it doesn't set forth a freestanding hearing. But again. But those wouldn't be adequate hearings, would they? Not in our position. Our position is it would not be adequate in this case. Because he not only had the good time credit, he also had the parole release date. That being said, Your Honor, I don't think the court needs to. The question of was a Wolf hearing required or a Drayton hearing required, I don't think the court needs to reach that for purposes of this appeal. Because no hearing was held. This is not a case where they tried to hold a hearing, they did something constitutionally deficient, but they thought they were doing the right thing. They didn't do anything at all. So I don't think that that's a question that has to be reached to determine whether or not the complaint states a claim. Thank you very much, and we'll take the matter under advisement. Nicely argued.